173 So. 121

BROCK et al. v. PAN AMERICAN PETROLEUM CORPORATION.

No. 34063.

Feb. 1, 1937.

Rehearing Denied March 1, 1937.

Cobb & Jones and Morris Wright, all of New Orleans, for appellant.

Dufour, St. Paul, Levy & Miceli, E. Howard M'Caleb, and Anna Judge Veters, all of New Orleans, for appellee.

LAND, Justice.

This is a suit by J. S. Brock et al., in charge of the Canal Bank & Trust Company in liquidation, against the Pan American Petroleum Corporation for rent alleged to be due under two written leases.

The total rent sued for under the lease of August 20, 1929, for the months of May, June, July, August, September, October, November, December, 1933, and part of January, 1934, at the rate of $1,891 a month, amounts to the sum of $15,908.93, exclusive of interest; and the amount of rent claimed under the lease of July 30, 1931, for the months of May, June, July, August, and September, 1933, at the rate of $444.53 a month, amounts to the sum of $2,222.65, exclusive of interest.

The Canal Bank & Trust Company was placed in liquidation on May 20, 1933, and the rent sought to be recovered under both leases became due subsequent to May 20, 1933. The first month's rent involved in this suit is that which fell due on June 1, 1933, and the remainder of the claim is for rent which became due July 1, August 1, September 1, October 1, November 1, and December 1, 1933, and January 1 and February 1, 1934, as under the terms of the two leases involved in this suit, the rent for each month was payable on the first day of the month succeeding that for which the rent was due.

On June 8, 1935, after the Canal Bank & Trust Company had been placed in liquidation, the defendant, Pan American Petroleum Corporation, in its answer, tendered pleas of "facultative compensation" and of "legal compensation," under the

Civil Code, and under the decision of this court in the case of In re Canal Bank & Trust Company (Intervention of Wainer), 178 La. 961, 152 So. 578. These pleas are predicated upon the solvency of the bank. Tr., p. 10.

However, in a motion for a new trial, filed May 22, 1936, after reiterating these pleas upon the assumption of the solvency of the bank, defendant corporation alleges: "But even if the Bank was insolvent the doctrine of Beatty v. Scudday, 10 La.Ann. 404, allowing compensation under such circumstances is controlling," thereby contending that People's Bank in Liquidation v. Mississippi & Lafourche Drainage District, 141 La. 1009, 76 So. 179, which holds to the contrary, should be overruled.

In the instant case, as in the Canal Bank & Trust Co. (Intervention of Wainer) Case, a frozen deposit in that bank is likewise pleaded by defendant corporation in compensation, or as an offset to the claim for rent by the Canal Bank & Trust Company in liquidation.

In the "stipulations of facts" in this case it is admitted: "That the Canal Bank & Trust Company was placed in Liquidation on May 20, 1933, and it is not now and has not been since May 20, 1933, in a position to pay all creditors and depositors in full in cash and the amount that will ultimately be paid to all depositors and creditors, and the time or times at which said payment, if any, will be made, is indefinite and not capable of ascertainment." Tr., p. 23.

In Re Canal Bank & Trust Co. (Intervention of Wainer), 178 La. 961, at page 966, 152 So. 578, 579, there appears the same stipulation as to the financial status of that bank, as follows: "The Canal Bank & Trust Company was placed in liquidation on May 20, 1933, and it is not now and has not been since May 20, 1933, in a position to pay all creditors and depositors in full in cash, and the amount that will ultimately be paid to creditors and depositors, or the time at which payment or payments will be made, is indefinite and not capable of ascertainment."

However, in Re Canal Bank & Trust Co. Case, it is specifically stated, 178 La. 961, at page 967, 152 So. 578, 580: "We fail to find any admission in the statement of facts agreed upon by counsel that the Canal Bank & Trust Company *was insolvent on March 27, 1933*, when the note for $20,000, signed by H. Wainer & Co. and indorsed by H. Wainer, fell due at that bank, and when it is claimed by intervener that compensation or set-off took place." (Italics ours.)

In the instant case, *on May 2, 1933*, before the bank went into liquidation, *May 20, 1933*, defendant company had on deposit a frozen balance of $30,020.15. *On May 2, 1933*, the following letter was addressed by defendant, Pan American Petroleum Corporation, to the Canal Bank & Trust Company:

"Dear Sirs: You are hereby authorized and directed *to apply against all rental now due and to become due* under the lease agreements between us dated August 20, 1929 and July 30, 1931 an amount equal to 70% of our total frozen balance in your bank in the name of Pan American Petroleum Corporation as of this date:

The rental *now due* amounts to $4,681.06 and covers the months of *April and May, 1933.*

"It is expressly understood that this authorization to apply our deposit toward the payment of rentals is limited to *the frozen portion* of the deposit, the payment of which you claim you are unable to make because of restrictions imposed by the Treasury Department of the United States.

"You are not authorized to offset against rentals any sum which may now be subject to check or which may hereafter become available as the result of the announced reorganization of the bank or the organization of a new bank, which amount we understood will be paid to us either in cash or in such other manner as we may later agree upon." (Italics ours.)

We fail to find in this letter any assertion of any right to accelerate the payment of the rent under either lease by the removal of any obstacle "arising from the dispositions of the law." Upon the face of the letter, rents to fall due, and not due and demandable, are tendered in compensation, or as an offset against the deposit of defendant corporation.

 We also fail to find any admission in the statement of facts agreed upon by counsel in this case that *on May 2, 1933,* when this letter was addressed to the Canal Bank & Trust Company, the bank *was insolvent.* So the bank must be presumed to have been *solvent* on that date, and the instant case falls clearly within the ruling made in the case of In re Canal Bank & Trust Co. (Intervention of Wainer), 178 La. 961, 152 So. 578.

In that case it is said: "In the second place, the provision in the note applying intervener's deposits on the note is not a contract, but is a mere waiver by the intervener of the obstacle of article 2210 of our Civil Code, in providing that compensation does not take place where one of the demands is for the restitution of a deposit.

"The exception provided by article 2210 of the Civil Code as to irregular deposits is in favor of the depositor and not of the bank.

"In France, where the Code contains articles similar to ours, it is universally recognized that, where the obstacle preventing compensation is in favor of one of the parties, that party may waive the obstacle and plead compensation; this kind of compensation being designated by the French commentators as 'facultative compensation.'

"In discussing this subject Planiol says [translating the French text]: 'Facultative Compensation is that which operates by the will of the parties, when one of them removes an obstacle resulting from the dispositions of the law. One of the conditions is lacking for legal compensation: for example, *one of the two debts* is not liquidated or perhaps it is *suspended by a term,* or perhaps it involves a credit arising out of a deposit: if the parties agreed to accept in compensation the non liquidated debt, *or if the one who had the right, renounces the benefit of the term,* or finally, if the depositor agrees to be governed by compensation, their will ought to be respected and compensation will op-

erate (Cass.Nov. 25, 1891, D. 92 1 296).' M. Planiol, Droit Civil, vol. 2, Troisieme Edition (1905) n. 594, pp. 194, 195." 178 La. 961, at pages 973, 974, 975, 152 So. 578, 582. (Italics ours.)

"A plea in compensation has a retroactive effect as of the date when the parties [plaintiff and defendant] became indebted to each other." Oilbelt Motor Co. v. George T. Bishop, Inc., 167 La. 183, 118 So. 881, 882; In re Canal Bank & Trust Company (Intervention of Wainer), 178 La. 961, 152 So. 578; In re Canal Bank & Trust Company (Intervention of Bank of Picayune), 179 La. 1018, 155 So. 760.

These cases settle the question that compensation, when decided by the court to be legal, has a retroactive effect to the day both debts, simultaneously existing, are liquidated, due, and demandable. It is therefore unimportant that defendant corporation made its plea of compensation in this case on June 8, 1935, after the Canal Bank & Trust Company had been placed in liquidation, as the frozen deposit of defendant corporation had been tendered to plaintiff bank in compensation on May 2, 1933, when the bank was admittedly solvent.

In the case of People's Bank in Liquidation v. Mississippi & Lafourche Drainage District, 141 La. 1009, 76 So. 179, 180, the state bank examiner "took possession of all the assets of the defendant, as those of *an insolvent bank*," on July 14, 1914. (Italics ours.)

The depositor's debt to the bank did not become due until March 1, 1915, *after* the bank examiner had taken over all the property of the bank, and the bank had lost the administration of its property, and no longer had the faculty of paying its debts by compensation or otherwise.

The depositor in that case did not tender his deposit in payment of his obligation to the bank *prior to the time* the bank examiner took over the assets, as in the Wainer Case and in the present case.

This court, therefore, held in the Wainer Case that the People's Bank Case had no application to the facts of that case and, for the same reason, we now hold that it has no application to the facts of the case at bar, except as hereafter in this opinion will be noticed. In re Canal Bank & Trust Co., 178 La. 961, 967, 968, 152 So. 578.

The plea of defendant corporation in this case is, necessarily, one of "facultative compensation," since, under the terms of the lease, the rent to be paid by that corporation to the bank was payable month by month, and each month's rent became due on the first of the succeeding month. In other words, the debt due by defendant corporation to the bank was suspended by a term, "an obstacle resulting from the dispositions of law," to use the language of Planiol, the French commentator. In fact, on May 2, 1933, when the frozen deposit was tendered by defendant corporation to the bank in compensation, the May rent was not due, under the terms of the lease, until June 1, 1933, nor was the rent for the months of June, July, August, September, October, November, and December, 1933, due, nor was the rent due for the months of January and February, 1934. Under this state of facts, the bank

refused to accept the frozen deposit tendered in compensation by defendant corporation.

The lease does not give to the defendant corporation the right to renounce the term for the payment of the monthly rent and to accelerate the payment of all the rent at its option. A lease being a commutative contract containing reciprocal obligations, it is clear that its terms as to the payment of rent cannot be changed without the consent of both parties to the contract.

Defendant company was not the one who had the right to renounce the benefit of the term, and this legal obstacle could not be removed without the consent of both parties to this lease. Such is the law of "facultative compensation," as announced by Planiol and other French commentators, and such is the law applicable to a lease, and to all other commutative contracts.

The only right to accelerate the payment of rent for the entire term is granted to the bank, as one of its options, because of nonpayment of rent for one or more months. But the bank has not, at any time, exercised such option or threatened or attempted to exercise same, and declare the entire rent due on the happening of the conditions set forth in the lease. Stipulations, Art. IX, Tr., p. 20.

Nor has the bank, at any time, accepted the rent for any office or space in the Canal Bank building more than thirty days before the rent was due. Stipulations, Art. XI, Tr., p. 23.

Under the facts of the case, the rent due by defendant corporation to the bank was not a debt simultaneously existing with the credit claimed by that company, arising

from the deposit, nor was the debt due and demandable·on May 2, 1933, when the frozen part of the deposit was tendered by defendant company to the bank.

It is provided in the following articles of our Civil Code that: "2208. Compensation takes place of course by the mere operation of law, even unknown to the debtors; the two debts are reciprocally extinguished, as soon as they exist simultaneously, to the amount of their respective sums."

"2209. Compensation takes place only between two debts, having equally for their object a sum of money, or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable."

For these reasons, the plea of "legal compensation," or compensation by "the mere operation of law," is not well founded. Nor can the plea of "facultative compensation" be sustained in this case, for the reason that the benefit of the term was not in favor of defendant corporation, under the leases, and could not, therefore, be waived by that corporation so as to accelerate the payment of the entire rent; and there was no agreement on the part of the bank with defendant corporation that this should be done.

Realizing the fraility of its contention that it had the right under the leases to accelerate the payment of the entire rent, defendant corporation has assumed the position in this case that, at all events, the rent became matured by *the insolvency of the bank*. And, in order to escape the ruling in the People's Bank Case, that debts maturing after an insolvent bank has been placed in the hands of a liquidator cannot be pleaded in compensation, defendant cor-

poration, in its motion for a new trial in the court below, invoked as controlling the doctrine of Beatty v. Scudday, 10 La.Ann. 404, allowing compensation even if the bank is insolvent.

The case of Beatty v. Scudday, 10 La. Ann. 404, was decided by the Supreme Court of this state in the year 1855, and has not been followed in People's Bank in Liquidation v. Mississippi & Lafourche Drainage District, 141 La. 1009, 76 So. 179, decided in 1917, and which was later affirmed and followed in Feliciana Bank & Trust Company v. City Bank & Trust Company of Mobile, Ala., 144 La. 389, 80 So. 600, and in Thomas v. Marine Bank & Trust Company, 156 La. 941, 101 So. 315.

In the Feliciana Bank & Trust Co. Case, 144 La. 389, at pages 395, 396, 80 So. 600, 602, it is said by Justice O'Niell: "Article 2215 of the Civil Code provides that compensation cannot take place to the prejudice of a third person; and, to illustrate, says that a debtor, who has been proceeded against by a third party by garnishment or attachment, cannot plead compensation if he afterwards becomes a creditor of the one to whom he was in debt.

"Applying those provisions of the Civil Code, in People's Bank v. Mississippi & Lafourche Drainage District, 141 La. 1009, 76 So. 179, it was said:

" 'There is express law upon the subject of the extinguishment of debts by compensation, and hence no occasion or authority for resorting to equity; but, if it were otherwise, there is no principle of equity which entitles a person who is, at once, a depositor in, and a borrower from, a bank, to be made whole, *in the event of its insolvency,* by the plea of compensation, when the other depositors stand to lose the entire amounts deposited by them.'

"In the case cited, extinguishment of the two debts by compensation did not occur *before* the bank failed, because payment of the debt of the borrower and depositor *was not then due.* In the case before us, extinguishment of the reciprocal debts by compensation did not occur *before* the bank failed, because there was an agreement between the parties that the deposit should remain—and it is admitted that it did remain—as a reserve fund, subject to check. The principle upon which the decision in the People's Bank Case rested is therefore equally applicable to this case." (Italics ours.)

In Thomas v. Marine Bank & Trust Co., 156 La. 941, at page 945, 101 So. 315, the decision in People's Bank Case, 141 La. 1009, 76 So. 179, is cited with approval.

In the case of Hibernia Bank & Trust Company v. Champagne, 8 La.App. 664, 666, and in People's Bank & Trust Co. v. Louisiana Rice Milling Company, 10 La. App. 401, 402, 119 So. 779, the People's Bank in Liquidation v. Mississippi & Lafourche Drainage District Case was cited by the Court of Appeal as representing the settled jurisprudence in this state on this point.

■ ·After having been affirmed by this court in the cases to which we have referred, and after having been followed by the Court of Appeal in the cited cases, the People's Bank Case has stood as the jurisprudence of Louisiana for nearly twenty years, and has become a fixed rule of property in this state.

The reversal of this case now would work the greatest hardship and injustice to the depositors of the closed banks of this state, who deposited their money in these banks relying, as they had a right to rely, upon the doctrine announced by this court in the People's Bank Case. We, therefore, decline to overrule that case.

Defendant corporation cannot be permitted in this case to assert the insolvency of the Canal Bank & Trust Company, after May 20, 1933, when the bank was placed in the hands of a liquidator, in order to mature the rent, in its entirety, due by that corporation to the bank; and, at the same time, escape the holding in the People's Bank Case, that debts, maturing after the property of an insolvent bank has been placed into the hands of a liquidator, cannot be pleaded in compensation, since all the rent claimed by the bank in this case matured after its affairs had been placed in liquidation.

And the reason for this holding in the People's Bank Case is that: " 'The moment the plaintiff bank was declared insolvent and its affairs placed under the control of the state examiner of state banks for liquidation, defendant was no longer entitled to the entire amount of his claim, but only to its distributive share or proportion of the assets of said insolvent bank as the liquidator might recover, and at such time as the liquidator might be able to make an equitable and legal distribution of those assets, at which time only its pro rata would become due and demandable. * * *

" 'It would virtually be giving a preference and paying a premium to depositors of the defunct bank who might be indebted unto it, as every dollar recovered in compensation by such debtor depositor, in excess of his distributive share of the assets of the bank, would reduce those assets to the detriment of other depositors, in contravention of article C.C. 2215, which declares that compensation cannot take place to the prejudice of the rights acquired by *a third person.'* " 141 La. 1009, at page 1016, 76 So. 179, 182. (Italics ours.)

For the reasons assigned, the pleas of compensation, "legal" and "facultative," cannot prevail.

█ Defendant corporation has been given full opportunity under the decision in the case of In re Canal Bank & Trust Co., 178 La. 961, 152 So. 578, which it has invoked in this case, to establish its pleas of compensation. Manifestly, its failure to have done so cannot be construed as an invasion of any right guaranteed to it by the Fifth Amendment to the Federal Constitution, nor can the decision of the Supreme Court of this state in the People's Bank Case reasonably be so considered.

We fail to find any substantial federal question involved in the case.

Judgment was rendered in the court below in favor of plaintiff, J. S. Brock, state bank commissioner, through H. G. Thompson, his special agent, and John F. Finke, liquidator, in charge of Canal Bank & Trust Company, in liquidation, and against defendant, Pan American Petroleum Corporation, in the full sum of $18,131.58, plus interest at the rate of 8 per cent. per annum on the sum of $2,335.53 from June 1, 1933, until paid; on the sum of $2,335.-53 from July 1, 1933, until paid; on the

sum of $2,335.53 from August 1, 1933, until paid; on the sum of $2,335.53 from September 1, 1933, until paid; on the sum of $2,335.53 from October 1, 1933, until paid; on the sum of $1,891 from November 1, 1933, until paid; on the sum of $1,891 from December 1, 1933, until paid; and on the sum of $1,891 from January 1, 1934, until paid; and on the sum of $780.93 from February 1, 1934, until paid, plus 10 per cent. attorney's fees on the total amount of the principal and interest, together with all costs.

For the reasons assigned, it is ordered that the pleas of legal and facultative compensation herein made by defendant, Pan American Petroleum Corporation, be and are hereby denied and overruled.

It is further ordered that the judgment appealed from be affirmed, and that defendant corporation pay all costs of this suit.

O'NIELL, C. J., absent.